as a sexually violent predator at the Special Commitment Center on McNeil Island Prison. To place this case in context, he was originally detained and charged as a sexual predator in 1991. That was the same year that he filed his lawsuit, Turay v. Weston, the 1983 lawsuit challenging the conditions of confinement. It was 1994 when the jury in that 1983 lawsuit returned its verdict in Turay's favor, saying that the conditions of confinement were unconstitutional due to lack of treatment. And it was 1994 when the district court Judge Dwyer entered the injunction. It is now 2004. SCC remains under injunction. Conditions have not significantly changed as found by the district court and as found by this court in the state's appeal of that order. In that context, we are raising three claims in Mr. Turay's, well, not the criminal case, but the civil commitment case. We have a set of trial error claims, which I don't think I'm going to get to in this argument. And then we have a claim about the burden of proof instruction and a claim about the conditions of confinement. Let me begin with the burden of proof instruction, although, of course, I'm happy to answer questions on any of the other claims. On the burden of proof question, I want you to assume for the purpose of my question that we agree with your argument that there was error and that it meets the required standard for error that is otherwise cognizable. Was it nonetheless harmless error? That's the issue I'd like you to address. Well, I think the standard for determining harmless error with a jury instruction error is different than the standard for determining harmless error with an evidentiary error. My understanding is that with a jury instruction error, you look to the balance of the jury instructions to see if there's any other instruction that might have cured the error, and that that's particularly important in a case like this where the error is in the critical burden of proof instruction, which we also look to see what the evidence is and whether the jury inevitably would have come to the same result with a different instruction there. So what difference did it make as a practical matter, assuming for the sake of this question that it was mistaken? I'd be happy to talk about the evidence, although I do want to say that I don't think you get there, because I understand Sullivan v. Louisiana is an appellate case, not a habeas corpus case. But nevertheless, it was a burden of proof instruction error case, and it said that you look at the jury instructions alone and see if there's any other instruction that could have possibly cured the error, because you don't know what the jury is thinking when they have all this different evidence. If you do go to the evidence in this case, I think that you will find that there was The question is, future dangerousness. Was he more likely than not to commit one of these crimes again? The state's expert psychiatrist, Dr. Dreiblatt, said yes, more likely than not. I believe he gave a 75% figure. The defense expert, Dr. Wise, said no, no ability to So the evidence on this point was that submitted, well, I should say the evidence directly on that point was that submitted by the two competing experts. The state's expert said yes, more likely than not, but of course didn't say by clear and convincing evidence. The defense expert said no, not even more likely than not. So you've got two competing theories from the experts. You certainly have lay testimony from the women who were raped, but that alone doesn't enable the jury to conclude future dangerousness. That's why both sides present experts. Well, I guess let me just try to put into maybe more simplistic terms my worry here. We do presume that jurors follow their instructions, but I'm trying to understand how a lay jury would differentiate between the higher standard burden of proof by a preponderance of the evidence versus another jury instructed that the person with the burden has to prove by clear and convincing evidence. Was those terms are explained? I mean, I know there's theoretically a difference, but as a practical matter, does a jury really come to a different result when you're talking about the two layers of the civil burdens, not looking at beyond a reasonable doubt, but looking at those two other burdens? I understand the difficulty that you're having, and the best I can do is refer you directly to Addington, the U.S. Supreme Court case, because they discuss precisely this point. Addington was the case which rejected the preponderance of evidence standard and adopted as a Fourteenth Amendment constitutional principle the clear and convincing evidence standard for civil commitment. And Addington itself says, look, we understand that lay juries aren't necessarily going to be understanding the difference between all of these things. Nevertheless, the Court concluded, it was constitutionally impermissible to lower the burden of proof because the result, the incarceration for an indefinite period up to life, was so. Well, that's what gets you to the question of error. But Addington didn't really deal with harmless error. And didn't Addington also say somewhere in there that there's not a huge difference between these two burdens of proof as distinct from the criminal? Well, maybe we're reading that paragraph somewhat differently. The portion that you're talking about where they're discussing the difference between the preponderance standard and the clear and convincing evidence standard is the part that I'm trying to talk about also. And they said, well, sometimes it's hard to tell the difference. We understand juries are lay people. What are they going to do? Nevertheless, they complete they said it was important enough, after making that discussion, they said it was important enough to reject and overturn preponderance of evidence findings. Addington was a direct appeal case, I believe. Sullivan v. Louisiana, the burden of proof instruction case that I've given you, is a direct appeal case also. But I am – I know of no habeas case which allows a review of the evidence where the burden of proof instruction itself is at issue. I understand that the habeas case is certainly asked about harmless error and whether prejudice has occurred. But I think the general – Including in the instructional context where there's a missing instruction on intent or something like that. Well, where there's – where there's a missing instruction or they do look to the evidence. For example, on materiality, I guess that was the Gowden decision I think the Supreme Court had held thereafter that where there could be – I think it's Johnson, it's not in the briefs. I think the Supreme Court has held, well, even where you blew it on the materiality element of fraud, we will look to the evidence to see if any possible jury could have found that materiality was not proved. That was not a burden of proof instruction. I think it's different with a burden of proof instruction. But even if you look to the evidence, the evidence on this point was not uncontroverted to meet the higher standard. The evidence on this point was hotly disputed by the competing experts. The other thing is the way that this instruction was phrased. We're talking about three elements that have to be proved beyond a reasonable doubt. And the third one, which is one of contention, that such mental abnormality makes the Respondent likely to engage in preparatory acts of violence. So that has to be found beyond a reasonable doubt that it would be likely. That's what it says, Your Honor. Now, I presume it was subjected to on that basis? That's correct. Even assuming the beyond a reasonable doubt standard gets you 95 or 97 percent certainty, you're asking the jury to get 95 to 97 percent certainty of a 51 percent proposition, more likely than not. And the cases that required the clear and convincing evidence standard required clear and convincing evidence on not just mental abnormality, but also future dangerousness. So we know under Fuchsia and under Addington that beyond a reasonable doubt on one, but beyond a reasonable doubt of a likelihood on the other, doesn't meet the constitutional standard. It's interesting the way you have to mathematically grant 97 percent and 50 percent. So would the difference between the two would be roughly 70 percent. Would that be the same as clear and convincing? Well, I don't think you subtract them. I think you multiply them. I think you do 97 percent of 51 percent, and you get only about half and half proposition that the proposition was proved. Your Honor, I see that I'm using up my time, and I would like to turn for a moment to the conditions issue, with the Court's permission. You may, although I don't understand what that has to do with this case, how the two meld. You'll have to explain that to me. Okay. Well, the unconstitutional Mr. Turay is confined in a prison-like setting and has submitted evidence throughout from 1991 on. In his other case? No. In this case. It's in the record. It's in the record, and it's the 18-volume record from Mr. Young's case was incorporated by reference by the superior court trial judge in this case showing unconstitutional conditions of confinement. It was made part of the superior court record in this case. It was addressed on direct appeal. It is a part of the record in this case. It was raised as a double jeopardy, Eighth Amendment and Fourteenth Amendment problem. I'm not arguing the double jeopardy ex post facto issue for obvious reasons. The Fourteenth Amendment and the Eighth Amendment problem were not dealt with at all by any of the prior cases, by Sealing v. Young, Young v. Weston, or the most recent, Young v. Weston. The only things those cases dealt with were double jeopardy or a subset of due process having to do with the definition of mental abnormality. They never addressed the claim that we're raising here. And, in fact, the Eighth Amendment claim and the Fourteenth Amendment claim are very different from the double jeopardy claim. The Eighth Amendment applies in civil cases, unlike the double jeopardy clause. We know that from Austin, United States v. Austin, the in rem civil forfeiture case that was decided favorably to the claimant under the Eighth Amendment. So we know the Eighth Amendment applies to civil cases, and the whole debate about whether it was civil or criminal is, therefore, irrelevant here. Same with the Fourteenth Amendment. We know, of course, that the Fourteenth Amendment applies to civil cases. Youngberg v. Romeo is the civil commitment case that applied it. We know that under the Eighth Amendment and the Fourteenth Amendment, context and the nature of punishment matters. We know that in the Eighth Amendment context from Austin, from Vagicagian, the other forfeiture case that I submitted this morning, and from the regular sort of death penalty, penalty phase Eighth Amendment cases, like Coker v. Georgia, detailing when that particular penalty is disproportionate. So we're on a different field here. We're not – we don't have the double jeopardy problem of having to characterize this case as a criminal statute in order to make this claim. We can raise it in a civil case, and we know that context matters. So here we are with a context where Mr. Turay has made his record, that 18-volume record that was incorporated by the superior court judge at the trial of his case, showing that for now 14 years, his incarceration has been at a prison, in a prison-like setting, without treatment. Under the Fourteenth and the Eighth Amendment, incarceration for civil purposes, for a mental problem, for civil commitment, without treatment alone, is punishment. And since it is a civil case for the purpose of treatment, any punishment at all is cruel and unusual punishment and disproportionate. The result here, I submit, we are not asking for release from confinement. I know the State has arguments about why that's not available, why in 1983 – why we can't ask for immediate release from confinement because of that. What we are saying is that Mr. Turay has been confined in the most restrictive alternative, a prison setting, for 14 years. The trial court had two choices, the most restrictive alternative or the least restrictive alternative. The most restrictive alternative has now been proven to be constitutionally impermissible. The least restrictive alternative, akin to sentencing-phase relief, is what we believe that this Court should impose here. I will save my five seconds. Thank you. Mr. Sampson. May it please the Court. It's contagious. It's not contagious, so I'm not going to feel guilty about any of your coughing out there. I think it's nerves on my part. May it please the Court. I am John Sampson, Assistant Attorney General, representing the Respondent. In this case, this Court's review is limited by 28 U.S.C. 2254d. That statute prohibits the grant of relief unless the State court decision was contrary to or an unreasonable application of clearly established Federal laws determined by the Supreme Court. The State court's decisions in this case were objectively reasonable. They reasonably applied Supreme Court precedent, and for that reason, the District Court properly denied relief. Addressing the two issues raised on opening argument, I'll start with the jury instruction issue. The State court instruction complied with Kansas v. Hendricks. The Supreme Court in Kansas v. Hendricks said that a State may civilly commit a person if the person has been convicted of a sexually violent offense, the person suffers from a mental abnormality or disorder, and that makes the person likely to engage in predatory acts of sexual violence. Kansas v. Hendricks includes the language likely to engage in such acts. That is the exact instruction given by the trial court in this case. The instruction is set out at Excerpts of Record 462-63, and the State court repeatedly reminded the jury that the State had the burden of proof beyond a reasonable doubt. The State had approved beyond a reasonable doubt those three elements, the prior conviction of a sexually violent offense, the mental abnormality, and the likelihood that that mental abnormality would make the person likely to engage in sexually violent acts. The statute complies with Kansas v. Hendricks or, I'm sorry, the instruction complies with Kansas v. Hendricks. The State court reasonably determined that the jury instruction was proper, did not render the trial fundamentally unfair. Therefore, the State court's decision is a reasonable application of the Supreme Court precedent, and the claim was properly denied by the district court. Addressing the issue of harm. The funding for the evidence that he would likely do it, doesn't that create a situation in which we're really finding, the jury is really finding whether he's likely to or not? That is the likely is the standard the Supreme Court used in Hendricks. In other words, that this mental disorder or abnormality makes the person likely to engage in such acts. The State had approved that element beyond a reasonable doubt, and the jury instruction told the jury the State had approved that. It's not that. What would that mean to you? Well, Your Honor, it's not that the person, the mental abnormality makes you beyond a reasonable doubt that you're going to commit these offenses. That's not what the jury had to find. They didn't have to find that beyond a reasonable doubt, this person is going to go out and commit another sex offense. They only had to find that it's likely that he's going to go out and commit a sex offense, and that the State has to prove that likeliness beyond a reasonable doubt. What does that mean? I mean, to a layman, what's it mean to prove likeliness beyond a reasonable doubt? The term likely was defined in the jury instruction as more probably than not. So they would have to find beyond a reasonable doubt that more probably or not this person would engage in such actions. So are we back to that 51 percent of 95 percent or something like that? It – that subelement is more probably or not. But the burden of proof is different than the subelement. You have the – you have, for instance, in the criminal arena, you have the elements of a crime, and then you have the burden of proof. And the burden of proof is beyond a reasonable doubt. But the elements of the crime may or may not necessarily be themselves beyond a reasonable doubt. They may be a probability. But the burden of proof, of proving that probability, remains beyond a reasonable doubt. And that's what the jury was instructed. And again, bring – I don't have one off the top of my head, Your Honor. But what I can say is, bringing this back to what I opened the argument with, this Court's review is limited by 2254d. Was the State court decision a reasonable application of Supreme Court case law? The Supreme Court in Kansas v. Hendricks said this is the standard for civilly committing a person. Now, this Court may, in its own judgment, disagree and believe that the instruction is erroneous. But that is not a basis for granting relief. It has to be more than erroneous. The State court decision has to be objectively unreasonable. And it is not, because the standard applied, the very standard set out by the Supreme Court in Kansas v. Hendricks. The Supreme Court may later change that ruling, but that does not affect the validity of Mr. Turay's civil commitment. Addressing very quickly the issue of harmless error, the court has to look at the instructions as a whole and must also look at the evidence presented in determining whether the instruction, if erroneous, rendered the trial fundamentally unfair and caused actual prejudice. And that is the standard on habeas, actual prejudice. It's not the State's burden of proof. It's not the Petitioner's burden of proof. The court looks at everything and determines whether there was actual prejudice. The testimony, you did have competing experts, but you also had the testimony of the prior victims. And as the Supreme Court indicated in Kansas v. Hendricks, testimony of prior acts is highly probative of the likelihood of somebody committing a sexual offense in the future. So you aren't limited to just two competing experts. You had other evidence. And in light of that other evidence, in light of the jury instructions as a whole, in light of the State court repeatedly telling the jury the burden of proof was beyond a reasonable doubt, there is no actual prejudice. Moving to the conditions of confinement issue, as argued in the State's brief, these claims are foreclosed by this Court's decision in Young v. Weston, both the one before and after the Supreme Court's remand. This Court refers to those as Young 3 and Young 4, and in the Supreme Court's decision in Sealing v. Young. In the first Young v. Weston, Young 3, a claim was raised of substantive due process based on the conditions of confinement. This Court denied that claim, finding it unsupported by law. That issue was not the Mr. Young did not seek review by the Supreme Court on that issue. He tried to litigate the issue again on remand. In this Court recently, and I submitted a supplemental citation of authority, it's Young v. Weston, 344 Fed 3rd at 976. This Court refused to even address the claim, saying that substantive due process claim was previously rejected. And I would point out that Young was a pre-antiterrorism and effective death penalty act case, so it was under the old standard. This case is under the new standard. Even more than in Young case, in Trey's case, his claim fails because Supreme Court precedent does not support a substantive due process claim in this case. And finally, on the Eighth Amendment claim, it fails simply because it's not punishment. The Supreme Court has determined it's not punishment. This Court has determined it's not punishment. If it's not punishment, it does not violate the Eighth Amendment. His only avenue is, as he has pursued, filing a civil rights action to attempt to correct the remedies. And that makes a difference if there's no treatment. If there's no treatment, Your Honor, that, again, is a conditions of confinement that the Supreme Court has said must be pursued in a 1983 civil rights action. No. I'm talking about the punishment aspect. If a person is put in a situation like that or in a mental institution with no treatment, isn't that punishment? No, Your Honor. First, I strongly disagree with any argument that there is no treatment. I believe that the district court's findings in the most recent 1983 order show that there is no treatment. And that's why the Court, although sanctions are accruing, has not actually ordered the State to pay those sanctions. But the Supreme Court in Kansas v. Hendricks indicated you can even have a situation where no treatment is available, such as you have a person with an incurable, highly contagious disease. You can isolate that person, even if it means the situation in this case. No, Your Honor, it's not. But answering your question, even if there was no treatment, that does not necessarily render a punishment. But there is no treatment to this specific defendant. In other words, the State is violating his rights to treatment that is otherwise available, but they're not giving it to him? No, no. They're putting him in an institution with no treatment, whereas treatment is available, no treatment can be done. Now, this is a situation where he's being put in an institution and given no treatment at all. Isn't that punishment? No, Your Honor. And the reason it's not is because the Supreme Court has said it's not. The test for punishment is the intent-effects test. And you look at the intent of the legislature, and then you look at the effect. And the effect is, as this Court recognized in the recent Young case, you look at the statute. At page 976 of Federal Reporter 344, quote, sealing bars us from evaluating the statute's purpose and effect with reference to its actual implementation. Instead, we must determine whether the text or legislative history of the statute in statute is emphasized in the quote, evidence is a punitive effect. So you don't look at the actual conditions as the statute is applied to a particular offender. You look at the statute and its effect that the statute requires. And the Supreme Court and this Court have already determined that this statute does not impose punishment. And that is what – that is the basis for why the Eighth Amendment claim fails. The State would ask that the Court affirm the district court's denial of the habeas corpus petition. Thank you. Thank you, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. I want to respond to the last point first. What the Supreme – the test that Mr. Sampson is talking about, the intense effects test, is not the test for punishment. It's the test under the Double Jeopardy Clause for whether a statute overall is criminal rather than civil. We've lost that. It's civil rather than criminal. It's done. I have a different argument. Under the Eighth Amendment and Fourteenth Amendment, Mr. Turay has been subjected to punishment. The Supreme Court did not address that in Sealing. The Ninth Circuit did not address that in either of the two young cases. The due process issue they addressed was totally different. It had to do with the definition of mental abnormality. Okay. Enough said on the conditions point. On the jury instruction point, let me quickly go over what the other instructions, the argument, and the evidence. There were no other jury instructions to cure the problem here. The elements instruction is what we've discussed. Beyond a reasonable doubt, find this mere likelihood. The only other instruction on the point was the one that defined likely to mean more probably than not. So no other jury instruction cured it. The evidence didn't cure it because the State's own expert, Dr. Dreiblatt, at ER 400 testifies, It is my judgment that more likely than not, if released, he would re-offend in a sexually violent way. So he didn't even testify, based on the evidence, that it was higher than a more likely than not standard. And if you look at the closing argument, you'll see that the State exploited that problem by arguing that's all, if you believe Respondent is likely to commit an act of sexual violence, that's all that's meant. And that's at the ER 478 to 480. Kennedy. Why isn't the State's interpretation of Kansas v. Hendricks a reasonable one? It is not a reasonable one. Cases decide the issues that are brought to them. The issue that was brought to the Court in Kansas v. Hendricks was a double jeopardy issue. And facially, they decided that as a facial matter, that statute did not violate the double jeopardy in ex post facto clauses. There was a substantive due process component of the Hendricks decision, but it's not what we were raising. It had to do with the definition of mental abnormality, period. So when Kansas v. Hendricks upheld Kansas's statute, they didn't uphold everything about Kansas forever and ever. They upheld it based on the two challenges brought to it. Double jeopardy, which we're not raising now, and this substantive due process definition of mental abnormality, which we're not raising now. Hendricks is conclusive on that. Hendricks is not conclusive on whether the eight under the Eighth Amendment and the Fourteenth Amendment, it is considered punitive to be incarcerated even though you haven't committed a crime without any treatment at all. About the instruction, though, that's the question I was asking, whether Kansas v. Hendricks permits this kind of an instruction. Kansas v. The issue about the propriety of this instruction with this burden of proof was not brought before the Court in Hendricks. The State's argument is that Hendricks, sub silentio, overruled both Addington and Fuchsia. Silently. And it didn't. Addington and Fuchsia explicitly held you need clear and convincing evidence. Hendricks did not overrule them. It dealt with a separate issue. Thank you, Your Honor. Thank you, counsel. The case just started and is submitted. We appreciate the arguments of the parties. And for this session, we stand adjourned. All rise. The Court for this session stands adjourned. The Court is adjourned.
judges: Hug, Graber, Clifton